BLACK v. CITY OF COLUMBIA.

1. The word "understanding" falls short of alleging a distinct and express contract between the parties.

2. The plaintiff brought action for damages against a municipal corporation, based upon the destruction of his house by fire, resulting from an inadequate supply of water, to a sufficient supply of which he claimed to be entitled by reason of a water tax assessed upon such property by the city and paid by him. *Held*, on demurrer, that the action was for a tort, and, therefore, as against a municipal corporation, could not be sustained.

3. A contract made by the officers of a municipal corporation to insure to a taxpayer an adequate supply of water to extinguish fires, would not be binding upon the corporation unless the officers had the right to make such a contract. The officers of the city of Columbia have no such right.

4. An action cannot be maintained in this State against a municipal corporation for the non-performance of a public duty, there being no statute authorizing it. The functions of municipal corporations considered.

5. Power to supply the city with water having been given by statute to a municipal corporation, a duty was thereby imposed which required the exercise of judgment and discretion, and was not, therefore, purely ministerial.

6. *White* v. *City Council of Charleston*, 2 *Hill* 571, and *Coleman* v. *Chester*, 14 *S. C.* 286, recognized and followed.

Before WITHERSPOON, J., Richland, July, 1882.

This was an action by Joseph R. Black, as trustee for himself and others, against the city of Columbia. The opinion states the case. The order of the Circuit judge, omitting its statement of the pleadings, was as follows:

The two causes of action will be considered separately and in the inverse order in which they are laid in the complaint. I regard the second cause of action *ex delicto* in its nature, as the plaintiff claims damages by reason of the non-performance of a duty devolved upon defendant under the law. No statute is pleaded giving the right to maintain an action for tort against defendant, nor was any such statute referred to upon the hearing. Whilst the rule is different in regard to private corporations, it seems to be well settled that such an action will not lie against a municipal corporation, like a city or town, created for the public good, unless authorized by statute. See *Coleman* v. *Chester*, 14 *S. C.* 286, affirming *White* v. *City of Charleston*. The defendant's demurrer to plaintiff's second cause of action must, therefore, be sustained.

I regard the first cause of action in the complaint as uniting two causes of action, damages being claimed as well for defendant's breach of contract as for breach of duty in not keeping the water pipes in order and furnishing plaintiff with a proper supply of water, which resulted in the destruction of plaintiff's property by fire. Plaintiff might have waived the tort and relied upon the contract, or *vice versa*. If plaintiff wished to rely upon both the tort and the contract he should have set up each as a separate cause of action. He has not done so. Defendant, before demurrer, by motion, could have required plaintiff to separate these two causes of action, or at least have required plaintiff to elect

between them. If either of the causes of action so united (in the first cause of action) can be maintained, the demurrer as to such cause of action must be overruled. In *Coleman* v. *Chester, supra,* it is held that a municipal corporation may make contracts and be bound by them without statutory authority.

It is true that this cause of action, whilst in its nature *ex contractu,* is not as formally or definitely pleaded as it should be, yet I am not prepared to hold that it is defective in substance; on the contrary, it substantially appears on the face of the complaint that defendant agreed with plaintiff, in consideration of the payment of the special water tax, to furnish water pipes in order and a sufficient supply of water to protect plaintiff's property from fire; that defendant failed to comply with this undertaking, by reason of which failure plaintiff's property was destroyed by fire, for which plaintiff claims damages. The facts stated cannot be disregarded because plaintiff also rests his demand for damages upon defendant's breach of duty. The informality in the statement of the cause of action for breach of contract must also be disregarded, if the facts are sufficiently presented as a cause of action. *Hammond* v. *R. R. Co.,* 15 *S. C.* 10.

It is therefore ordered and adjudged that defendant's demurrer to plaintiff's second cause of action be sustained, and that said demurrer to first cause of action for damages for breach of contract be overruled, but with leave to defendant to answer over within thirty days from service of notice of the filing of this decree, without prejudice to any right of defendant to require the first cause of action to be made more definite and certain upon the matter of contract therein relied upon. Upon defendant's failure to answer within the time herein directed, the plaintiff may have his damages assessed at the next or some subsequent term of court, as in case of default.

*Mr. J. T. Sloan, Jr.,* for defendant, appellant, cited 19 *Ohio St.* 19; 29 *Ind.* 187; 12 *Ohio St.* 375; 69 *Pa. St.* 420; 17 *B. Mon.* 722; 2 *Hill* 571; 3 *Pet.* 409; 14 *S. C.* 286; 1 *Greenl. Evid.,* § 256.

*Messrs. Bacon & Moore,* contra, cited 14 *S. C.* 286; *Dill. Mun. Corp.,* §§ 373, 374, 383–5, 750, 774–8, 957, 1048, 1027, 1021,

789, and the authorities referred to in the *notes; Story Ag.*, §
52; 16 *Cal.* 255; 24 *Ill.* 105; 2 *N. & McC.* 537; 1 *Spears* 31;
*Cooley Tax.* 416, 427; 43 *Ind.* 574; 91 *U. S.* 551; 102 *Mass.*
489; 38 *Geo.* 334; 2 *Den.* 433; 11 *H. L. Cas.* 686; 11 *R. I.*
141; 2 *Hurlst. & N.* 204; 22 *Pa. St.* 54; 124 *Mass.* 564; 126
*Id.* 324; 73 *N. Y.* 365.

June 29th, 1883. · The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action against the
city of Columbia to recover $2,500 damages, the value of a
dwelling-house and outbuildings destroyed by fire on February
22d, 1882, by reason, as alleged, of the failure on the part of the
defendant corporation to keep its water pipes, hydrants and
fixtures in repair, so as to furnish a sufficient supply of water
to enable the engines to extinguish fires. The fire did not
originate on the plaintiff's premises, but in a neighboring build-
ing, and, it was alleged, could have been extinguished before it
reached and consumed the plaintiff's house, had there been a
sufficient supply of water in the pipes, and that the want of such
supply was caused by the negligence of the corporation.

The complaint contained two causes of action. The first,
among other things alleged: "That the defendant is a munici-
pal corporation, and by virtue of several acts of the legis-
lature, is clothed with a general power of taxation, and also with
certain special powers of taxation within the corporate limits of
the city. * * * And also with the power of laying down all
pipes, fixtures, fire plugs, hydrants, water works and cisterns,
within the said corporate limits, with ample power at any and all
times to make ordinances, rules and regulations necessary to the
execution of their said powers. That by virtue of such powers
and the said charter, and of the ordinances passed thereunder,
the said defendant corporation did lay down or cause to be laid
down in the streets leading to and upon plaintiff's premises,
certain water pipes, and did place and cause to be placed in said
streets certain hydrants connected with said pipes. * * *
That said defendant did assess upon plaintiff's said property an
annual tax for the use of the said pipes, and of the water to be
furnished thereby to the plaintiff by defendant for certain pur-

poses, among others, in case of fire in or about the said premises and for the extinguishment thereof. That in consideration thereof, and with the understanding that the plaintiff was to be furnished with an ample supply of water by means of the said pipes and hydrants for the extinguishment of any fires that might occur as aforesaid, the said plaintiff did agree to pay and did pay to the said defendant the annual tax so assessed and imposed. * * * That by reason of the premises and of the powers and duties imposed by said acts and by reason of the ordinances of the said defendant, and in consideration of the tax so paid, and in consideration of the said understanding that the pipes and hydrants aforesaid should be properly laid down and placed so as to furnish the said plaintiff with an adequate supply of water for necessary purposes, and for the extinguishment of fires as aforesaid, it became and was the duty of the defendant to lay down such water pipes, and to place such fire plugs and hydrants as would furnish a full and adequate supply of water for the purpose aforesaid, and at all times to keep in said pipes, fire plugs and hydrants, such adequate supply of water and to keep said pipes and hydrants in proper order. * * *

"That the said city of Columbia, unmindful of its duty in the premises under the charter and ordinances aforesaid and its understanding with the plaintiff, and notwithstanding the taxation and assessment of the said sum of money and in utter disregard of the plaintiff's right, wholly failed and neglected to comply with its obligations or perform its duties and to keep said water pipes and hydrants in proper order, and to keep in the same a sufficient supply of water for the extinguishment of fires as aforesaid. * * * That on or about February 22d, 1882, the house of one Carr, adjoining plaintiff's lot, took fire; that the alarm being given, the fire department and other persons repaired to the spot in sufficient force, with engines, &c., in ample time to extinguish the fire and prevent its extending to plaintiff's buildings; but, although strenuous efforts were made to draw water from the pipes and hydrants aforesaid, it was impossible to obtain therefrom a sufficient quantity, said pipes and hydrants not being in proper order, and there not being in said pipes and hydrants a sufficient quantity of water to extinguish

said fire or to enable the engines to play upon plaintiff's buildings, or in any manner to check or extinguish said fire, whereby plaintiff's said dwelling-house and other buildings were totally consumed, to the plaintiff's damage twenty-five hundred dollars," &c.

The second cause of action made substantially the same allegations. It omitted, however, the statements that the city had the pipes laid down and that there was an understanding between the plaintiff and the defendant corporation that there should be, at all times, a sufficient supply of water in the pipes for the purpose of extinguishing fires. This cause of action simply stated " that the city of Columbia, a corporation, found and took possession of the water-pipes, hydrants, &c., and passed an ordinance in the following terms: ' That each and every owner of real estate upon any street where water is brought by pipes or otherwise from the city reservoir, shall pay to the city treasurer, at the same time with the other taxes imposed by this ordinance, a general tax of one dollar for each fifty feet of frontage when there are buildings, and one cent per foot of frontage when there are no buildings upon lots so taxed; provided, that every one shall pay a water tax of not less than one dollar; and provided, further, that no property-holder shall be charged with more than one frontage for each piece of property owned by him,' " &c. That the plaintiff paid the tax assessed upon him as an owner of real estate under this ordinance, " by reason whereof it became the duty of the defendant corporation to keep said water pipes, fire plugs and hydrants in good order, and to keep in said pipes and hydrants a sufficient quantity of water, at all times, for the extinguishment of fires," &c. It further alleged that the plaintiff performed all the conditions required of him; but the defendant corporation did not, and that in consequence the plaintiff's said dwelling-house and other buildings were totally consumed by fire, to the plaintiff's damage twenty-five hundred dollars.

The defendant corporation demurred upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and the cause coming on for trial before Judge Wither-

2B

spoon, he sustained the demurrer as to the second cause of action, holding that it was *ex delicto* in its nature, and as such could not be maintained against a municipal corporation for a *nonfeasance*. But he overruled the demurrer as to the first cause of action, holding that it contained the elements of two causes of action, " damages being claimed as well for defendant's breach of contract as for breach of duty in not keeping the water-pipes in order and furnishing plaintiff with a proper supply of water, which resulted in the destruction of his property by fire," stating at the same time that, whilst the first cause of action was, in its nature, *ex contractu*, it was not as formally or definitely stated as it should have been.

From this ruling the defendant corporation appeals to this court upon the following exceptions : " 1. For that his Honor erred in holding that the defendant's demurrer to the plaintiff's first cause of action be overruled. 2. For that his Honor erred in holding that he could sustain the first cause of action to the complaint herein, when, as he decided, two causes of action were united in it—one for breach of contract and the other for breach of duty—by separating the one from the other. 3. For that his Honor did not hold that the injury complained of is too remote, and is not the proximate or natural consequence of the act, and that no liability on this account can attach to the defendant. 4. For that his Honor did not hold that an action to recover damages for a tort cannot be maintained against a municipal corporation, unless provided for by statute."

The plaintiff, whilst resisting the appeal of the defendant, gave notice that he also appealed to this court upon the following grounds : 1. " Because his Honor sustained the demurrer to the second cause of action. 2. Because his Honor decided that cause of action to be a cause of action *ex delicto*. 3. Because his Honor decided that such an action, unless authorized by statute, will not lie against a municipal corporation. 4. Because his Honor decided that the first cause of action united in itself two causes of action, ' damage being claimed as well for defendant's breach of contract as for breach of duty.' " The questions made by these exceptions will come under review in connection with

the consideration of those filed by the defendant, and therefore they will not be taken up separately or considered *seriatim.*

The effect of the defendant's demurrer was to admit the allegations of the complaint, but this being the result of a rule of law and not of evidence, these statements are not to be amended by intendment, but must be taken as they stand.

Without stopping to consider the effect of mixing, in the first cause of action, allegations which indicate a tort with those which may be supposed to point towards a cause of action *ex contractu,* we have grave doubts whether the allegations made in that cause of action—taken as a whole and considered together—make out a cause of action upon a contract with the plaintiff personally, to insure or guarantee to him at all times an ample supply of water in the pipes for extinguishing fires, &c. It is certainly the general rule that the contract of a corporation should be evidenced by proper corporate proceedings, and nothing of that kind appears here. Neither the word "contract" nor "agreement," as referring to the action of the corporation, is stated. As applied to the corporation the strongest term used is "understanding" which is equivocal, or at least falls short of alleging a distinct and express contract between the parties.

Looking at the situation of the parties and the subject-matter, we can not resist the conclusion that the plaintiff merely meant to allege the existence of certain facts—such as the power to make the assessments—the payment of the tax for water frontage, &c., and that these facts raised a legal obligation which authorized the fiction of an implied assumpsit. We do not understand that the plaintiff meant to allege or did allege that there was a distinct agreement beyond what could be implied from the facts stated, and this view is strengthened by the manner in which the alleged breach is stated, "that the defendant corporation, in utter disregard of its duty, wholly failed and neglected to comply with its obligations or perform its duties, and to keep said water pipes and hydrants in proper order and to keep in the same a sufficient supply of water for the extinguishment of fires," &c. We regard both causes of action as substantially charging a non-feasance on the part of the corporation, a tort.

If, however, we consider that there was alleged a distinct express contract of the officers with the plaintiff personally, undertaking to insure to him an adequate supply of water in the pipes at all times for the purposes aforesaid, it does not necessarily follow that the action could be maintained upon such contract. That would involve another question, whether the officers of the corporation had the right to make such a contract. Doubtless there are cases in which a contract by a municipal corporation will be implied from facts. These, however, arise for the most part out of transactions in which the corporation itself has in some way received and used property or money which, *ex equo et bono,* does not belong to it. But in all cases, either of express or implied contract on the part of the corporation, the contract cannot be enforced against the corporators, if it is in violation of the charter or beyond the scope of the agency created by it. In such case the principle of *respondeat superior* does not apply, but the alleged contract is *ultra vires* and void. To this class belongs an alleged contract which restricts the exercise of legislative discretion vested in the municipality or its officers in reference to public duties, and "upon such contract the corporation can not be held liable either in special or general assumpsit." *Thomas* v. *City of Richmond,* 12 *Wall.* 349; *Dill. Mun. Corp.,* §§ 61, 372, and *notes.*

In the case from Wallace, notes were issued by the City of Richmond to circulate as money in contravention of law, and it was held that they could not be recovered. The court said: " Municipal corporations represent the public, and are themselves to be protected against the unauthorized acts of their officers when it can be done without injury to third parties. Persons dealing with such officers are chargeable with notice of the powers which the corporation possesses, and are to be held responsible accordingly. The issuing of bills by such a corporation without authority is not only contrary to positive law, but, being *ultra vires,* is an abuse of the public franchise which has been conferred upon it; and the receiver of the bills being chargeable with notice, is in *pari delicto* with the officers and should have no remedy against the corporation. * * * The protection of public corporations from such unauthorized acts of

their officers is a matter of public policy in which the whole community is concerned," &c.

If, as alleged, there was in this case a contract by the officers of the city insuring to the plaintiff an adequate supply of water at all times and under all circumstances, we incline to the opinion that it was a contract restricting the discretion of the municipality, beyond the scope of the charter, and if actually proved, would not support an action against the corporation.

Assuming, then, that both causes of action substantially charged a tort, could the action be maintained? There is no statute in this State authorizing an action against a municipal corporation for non-feasance as to a public duty. The general doctrine is, that civil or municipal corporations are public in their nature, but instrumentalities of the State which incorporates them to assist the State in more effectually discharging its duty. The powers conferred on such corporations are not always uniform, but they generally relate to the administration of justice, the support of the poor, the establishment and repairs of highways, &c., all of which are matters of State as distinguished from local concerns. It seems to have been considered that, as the State cannot be sued, these governmental agents of the State should not be liable in an action of tort, for either non-feasance or misfeasance; that they are not liable in case or trespass or other form of civil action for neglect of public duty unless such liability be expressly declared by statute.

In 1829 the Supreme Court of the United States so held in the case of *Fowle* v. *The Common Council of Alexandria*, 3 *Pet.* 408. In delivering the judgment of the court, Chief Justice Marshall said: "That corporations are bound by their contract is admitted; that many corporations, or those carrying on business for themselves, are liable for torts, is well settled; but that a legislative corporation, established as a part of the government of the country, is liable for losses sustained by a non-feasance— by an omission of the corporate body to observe a law of its own, in which no penalty is provided—is a principle for which we can find no precedent. We are not prepared to make one in this case."

In 1834 the same doctrine was announced in this State, in the case of *White* v. *City Council of Charleston*, 2 *Hill* 571, where it

was held that: " There is a distinction between private corpora-
tions exercising their corporate functions for the benefit of its
members, and public corporations instituted for the purposes of
government. The former are liable to individuals for an omis-
sion or malfeasance of their corporate duties, but the latter,
although subject to indictment for a breach of corporate duty,
are not liable to an action by an individual unless it be given
by statute; and, therefore, it was held that the city council of
Charleston was not liable to an action for an injury to the plaintiff,
in having his house blown up during a fire, although the fire was
extinguished before it reached his house," &c.

Such seems to be the settled law of this State. As lately as
1880, in the case of *Coleman* v. *Chester,* 14 *S. C.* 291, Judge
McIver, in delivering the judgment of the court, said: " While
it is quite true that in some of the States a contrary conclusion
has been reached, we think it settled in this State, by the case of
*White* v. *The City Council of Charleston, supra,* that an action to
recover damages for a tort, unless it be provided for by statute,
cannot be maintained against a municipal corporation, character-
ized by Marshall, C. J., in *Fowle* v. *Alexandria,* as 'a legislative
corporation established as part of the government of the coun-
try.' The case of *White* v. *City Council,* so far from being
shaken, is rather confirmed by the subsequent case of *Main* v.
*Railroad Company,* 12 *Rich.* 82. In the last case it was held
that an action of trespass could be maintained against a railroad
company—a corporation formed and exercising its functions for
the pecuniary benefit of its members—and not a public corpora-
tion, instituted for the purposes of government, &c. * * *
Hence, whatever may be the rule elsewhere, we are bound to
declare it as established by *White* v. *City Council,* unless we over-
rule that case, which we do not feel justified in doing," &c.

As suggested in the foregoing opinion, in some of the later
cases of other States modifications of the general rule as to the
non-liability of municipal corporations have been adopted.
Many of the cases upon the subject, cited at the bar, have been
examined, and we confess that we are unable to see clearly the
principle upon which these modifications rest. The general
doctrine, as announced by Marshall and Harper, is clearly recog-

nized in all of them; but the view seems to be, that all the powers granted to a municipal corporation are not civil or governmental in their character, but that some of them are what is called merely corporate; and the effort is made, first to separate these powers, distinguishing those which are civil or public from those which are private and local, and then, in regard to those assigned to the latter class, to impose responsibility for negligence only where the duty is not discretionary but purely ministerial in character.

With all due respect, it seems to us that if the powers granted to a municipal corporation are susceptible of such division and separation, it would be exceedingly difficult to carry the doctrine into anything like uniform practice. Opinions must certainly differ, both as to the proper classification of the powers and the character of the duty imposed by them. The necessity of determining in each case, whether a particular power should be ranked in the class of corporate as distinguished from civil powers; and, if the former, whether its exercise imposes a duty, discretionary or merely ministerial, must be the source of constantly-recurring difficulties, and tend to great confusion and uncertainty in the administration of the law.

But, be that as it may, we do not regard the question as involved in this case. If we were at liberty, notwithstanding our own decided cases, expressed in general terms without limitation or qualification, to consider the propriety of the modifications suggested to the general rule, we do not think that the non-feasance complained of here can be properly said to be in reference to a power merely corporate in character, or that the duty imposed was merely ministerial. The system of water works and its management required, on the part of the city authorities, the exercise of discretion and judgment. The power was granted by law to a municipal corporation, and we do not see how it can be properly regarded as imposing a duty purely ministerial in its character.

In the case of *Wheeler* v. *City of Cincinnati,* 19 *Ohio St.* 19, (2 *Am. Rep.* 368,) the plaintiff's house, situated in the city of Cincinnati, was destroyed in a fire, and he sued the corporation for damages on the ground that the corporation had failed to pro-

vide the necessary cisterns and suitable fire engines, and that certain officers of the fire department of the city had neglected to perform their duty in extinguishing the fire which consumed his house. The corporation, as in this case, filed a demurrer, which was sustained. Upon appeal to the Supreme Court it was held that: " The laws of this State have conferred upon its municipal corporations power to establish and organize fire companies, procure engines and other instruments necessary to extinguish fire and preserve the buildings and property within their limit from conflagration ; and to prescribe such by-laws and regulations for the government of said companies as may be deemed expedient. But the powers thus conferred are in their nature legislative and governmental ; the extent and manner of their exercise, within the sphere prescribed by statute, are necessarily to be determined by the judgment and discretion of the proper municipal authorities ; and for any defect in the execution of such powers the corporation cannot be held liable to individuals. Nor is it liable for a neglect of duty on the part of fire companies or their officers charged with the duty of extinguishing fires. The power of the city over the subject is that of a delegated *quasi*-sovereignty, which excludes responsibility to individuals for the neglect or non-feasance of an officer or agent charged with the performance of duties. The case differs from that where the corporation is charged by law with the performance of a duty purely ministerial in its character. We know of no case in which an action like the present has been held to be maintainable. *Brinkmeyer* v. *Evansville,* 29 *Ind.* 187 ; *Western College of Medicine* v. *City of Cleveland,* 12 *Ohio St.* 375."

Mr. Dillon, who, in his general views, is very much inclined to make municipal corporations liable, in commenting on the case of *Wheeler,* says: " Nor is such a corporation liable to the owner of property destroyed or damaged by fire in consequence of its neglect to provide suitable engines or fire apparatus, or to provide and keep in repair public cisterns. In that case (*Wheeler's*) a liability on the part of the corporation was sought to be sustained upon the ground of the neglect of a corporate duty, but the court considered that powers of this nature, con-

ferred upon municipal corporations, were legislative and governmental, and excluded the notion of responsibility to individuals, based on neglect or non-feasance, and distinguished the case from those in which the duty is purely ministerial," &c. 2 *Dill. Mun. Corp.*, § 474, and many authorities there cited in the *notes*.

The judgment of this court is that the judgment of the Circuit Court be reversed and the complaint dismissed.