FREEMAN *v.* MACON GAS LIGHT & WATER COMPANY.

126　843
f128　216

126　843
d129　113

When a private corporation, in the exercise of a franchise granted by a municipality pursuant to a statute, which confers upon it the right to use the streets of the city on condition that it will therein lay its mains and furnish the municipality and its inhabitants with a supply of water at fixed tolls, engages in the business of supplying the general public with water, it becomes liable as a public-service corporation for its wrongful act in cutting off the supply of water which it is under a duty to furnish to one of its patrons as a member of the public at large.
Unless the agents of the company knew of the illness of a member of the consumer's family, this fact can not be relied on by him as an aggravating circumstance; nor can he recover damages on the mere allegation "that another member of his family was suffering from a painful illness."

Submitted July 18,—Decided November 16, 1906.

Action for damages.　Before Judge Hodges.　City court of Macon.　December 9, 1905.

A petition was filed by M. R. Freeman against the Macon Gas Light & Water Company, a corporation alleged to be engaged in the business of furnishing gas and water to the residents of the city of Macon, and having "a monopoly of such business in said city." The complaint of the plaintiff was, that on May 26, 1905, the defendant company, without giving him any notice and "without legal cause," cut off the supply of water from his premises, at a time when he was sick in bed and another member of the family was suffering from a painful illness; subjecting him to great indignity, annoyance, and inconvenience, and imperilling the health and lives of the members of his household. By way of inducement the plaintiff alleged, that on November 26, 1891, the company entered into a twenty-year contract with the city, whereby the company bound itself not to cut off the water supply from any customer or consumer except after five days notice in writing, duly served on such consumer or customer, and this was one of the rules established by the company; that prior to May 26, 1905, he had the water fixtures in his residence connected with the public water-mains of the company, which are laid in the streets of the city, and used the water furnished by the company for all domestic purposes, this being the only water supply which the city authorities permitted householders to use; and that the defendant, by cutting off this supply, wilfully deprived petitioner's entire household of an absolute necessity which could be obtained nowhere else. The ·

plaintiff characterized the action of the company as "illegal and oppressive," and alleged that he had been thereby damaged in the sum of twenty-five hundred dollars.

The defendant demurred to the petition, on the ground that no cause of action was set forth, and also upon the following special grounds: (1) The allegation that the company has a monopoly of the business is irrelevant and impertinent. (2) Plaintiff fails to show under what contract with the company he had the fixtures in his residence connected with its mains, or by what right, or what relation he bore to the company or what duty it owed him. (3) The terms of the contract between the city and the company are not plainly and fully set forth, nor the rules referred to in the petition. (4) The plaintiff has no right to sue upon that contract, there being no privity between him and the company, and he having no right to complain of any violation of the contract. (5) The allegation that the company cut off plaintiff's water supply "without legal cause" is a mere conclusion, and he should allege "what cause there was and why the same was not legal," so that the court might determine whether the same was a legal cause. (6) That another member of plaintiff's family was ill is irrelevant, he not having any right to recover any damages because of this fact; nor can he recover anything under the allegation that the company imperilled the health and lives of his entire household. (7) No facts are alleged showing special damage, and the plaintiff does not show in what manner he has suffered damage in the sum of $2,500.

By way of amendment, the plaintiff attached to his petition a copy of the contract between the city and the defendant, which recited that it was entered into by virtue of the act approved September 29, 1891, amending the charter of the city of Macon, and also a copy of the rules which he asserted had been promulgated by the company and published as those under which it dealt with the city and its other patrons. He further alleged, that this contract was designed in part for the protection of the private consumers in the city, who were not permitted to have wells; that the company enjoyed a valuable franchise granted by the city on condition that it would furnish water to the city and its citizens in accordance with the terms of the contract, so that the company owed a public duty to every consumer to conduct its business according to the terms of its contract and the rules published by it; that the company utterly dis-

regarded the public duty which it owed to plaintiff as a citizen, head of a family, householder, and housekeeper, and as "a customer who had, with defendant's full consent, connected his water pipes with the pipes of defendant;" and that at the time the company committed the grievous wrongs complained of he did not owe the company any amount whatever as a consumer of water, and the cutting off of his water supply was "wantonly and wilfully done with full knowledge of the fact." By another amendment the plaintiff set up that the "defendant owed to petitioner a distinct duty not to do and commit the wrongs complained of," whereby he had been damaged in the sum originally named, as well as in the further sum of one dollar, which he had been forced to pay for labor in having his water supply turned on after it had been wrongfully cut off by the defendant. After the plaintiff had amended his pleadings as above stated, the company pressed its demurrer, and the court passed an order reciting that the general and special grounds of demurrer were sustained. To this order exception is taken.

*H. F. Strohecker* and *J. E. Hall,* for plaintiff, cited: Civil Code, § 3807 (2, 3).

*N. E. & W. A. Harris,* for defendant, cited: Civil Code, §§ 3664, 4939, 3798, 3912, 3913, 3807; 83 *Ga.* 219; 119 *Ga.* 159; 7 A. & E. Enc. L. (2d ed.) 110; 110 Cal. 339 (52 Am. St. R. 88) ; 107 Mass. 42 (9 Am. R. 3) ; 104 Mo. 234 (24 Am. St. R. 333) ; 81 Wis. 48 (29 Am. St. R. 856) ; 90 *Ga.* 486; 12 Atl. 855 (14 L. R. A. 669) ; 86 *Ga.* 601; 124 *Ga.* 185, 556; 105 *Ga.* 380; 79 Am. Dec. 278, 360; 63 Am. St. R. 841; 75 N. E. 2.

EVANS, J. (After stating the facts.) When a private corporation undertakes to supply water to a municipality and its inhabitants for toll, it enters upon a public service. 1 Farnham on Waters & Water Rights, § 162. The business and purpose for which a water-supply company is incorporated are of such a public character as to make it a quasi public corporation. City Water Co. *v.* State (Tex.), 33 S. W. 259; Foster *v.* Fowler, 60 Pa. St. 27. In order to effectually carry out its purposes, valuable franchises in the use and occupation of the city's streets and alleys are granted, and the corporation assumes the obligation of giving adequate service to the public at large. These features of its business stamp its character as a public-service corporation, and it will be liable as such in the conduct of its undertaking, under a contract authorized

by a statute of the State, to supply the city and its inhabitants with water. In its general characteristics a water company which accepts a franchise conferring upon it the right to use the city's streets, on condition that it will serve the public by furnishing the necessary water supply, may be likened to a street-railway corporation to which has been granted a franchise to occupy the streets of the city and engage in transporting passengers for hire. Each would owe certain duties to the public and would become liable to an individual for its failure to perform, to his injury, service which it was under a duty to render to him as a member of the general public. For a breach of its public duty the injured party could recover nominal damages, or, if the circumstances so warranted, punitive damages, and also such special damages as might proximately flow from the breach and were sustained by him

What we have just said in no way conflicts with the principle decided in *Fowler* v. *Athens Water-Works Co., 83 Ga.* 219. There the water company was sought to be held liable to a private citizen because of a failure to perform a duty owing to the municipality, under a contract with it to furnish it an adequate supply of water for fire protection. The city, in the exercise of its governmental functions, undertook to afford its citizens adequate fire protection— not by itself laying mains and maintaining a water supply plant, but by hiring one Robinson to do so. No franchise of any kind was granted to Robinson, nor did he in any way obligate himself to serve the public at large; and it was not contended that the municipality had any power under its charter, by way of contract or otherwise, to impose upon him any public duty towards its inhabitants. Accordingly, the decision in that case was put upon the ground that there was no privity of contract between the plaintiff and the assignee of Robinson (the Water-Works Co.), and that, in the absence of statutory provision, the contract made with the city raised no public duty towards any of its inhabitants to furnish an adequate supply of water for fire protection. In the present case it affirmatively appears that the contract relied on by the plaintiff was made in pursuance of express authority conferred by the legislature upon the municipality to grant a franchise upon certain terms, one of which was that private consumers should be furnished water at rates to be fixed by the city in the contract with the Macon Gas-Light and Water Company. (See amendment to charter, Acts

of 1890-91, p. 573, sec. 14.) The Water Company, by entering into the contract which the General Assembly authorized the city to make with that company, accepted the privilege of supplying the citizens of that city, as such, with water upon certain terms, and became a public-service corporation with an express statutory duty to perform. This duty the company owed to every private consumer of water, independently of any contract duty it owed to the municipality itself, considered as a municipal corporation engaged in the discharge of governmental functions. For a breach of this statutory duty the company could be held liable in tort by the aggrieved member of the public, though he was no party to the contract between the city and the Water Company. A private person may not only sue a public-service corporation for a breach of duty owing to him, but he may by mandamus even enforce the performance by the corporation of its public duty as to matters in which he has a special interest. *Savannah Canal Co. v. Shuman,* 91 *Ga.* 400.

The petition as amended set forth a cause of action sounding in tort, and the particular tort alleged was a wilful breach by the defendant company of a public duty which it owed to the plaintiff as a consumer of the water it undertook to supply to the inhabitants of the city. The suit is not based on the contract between the water company and the city; this contract is simply alleged by way of inducement, for the purpose of establishing the nature and scope of the duties and liabilities of the company relatively to the general public. It is clear, therefore, that the action should not have been dismissed upon general demurrer.

The objection raised by special demurrer to the allegation that the water company had a monopoly in its business of supplying the public with water was without merit. The term "monopoly" was not used in any offensive sense, or with the purpose of insinuating that the company was not conducting a legitimate business, but with a view to setting forth the pertinent fact that the company had the exclusive privilege of supplying the city and its inhabitants with water, and for this reason the plaintiff was wholly dependent upon the company for his supply of water. The assertion that the company cut off his supply "without legal cause" was an allegation to the effect that the company, without any justification, wrongfully discontinued to serve him; it was not a mere conclusion

of law, nor was the plaintiff under any obligation to elaborate his pleadings as to this matter. In the absence of an averment that the defendant knew that another member of the plaintiff's family was ill at the time the water was cut off, this fact could not be relied on by the plaintiff as an aggravating circumstance connected with the wrong complained of; nor was it pertinent that the action of the company imperilled the health and lives of his entire household, the plaintiff having no right to damages for any injury or inconvenience the members of his family may have suffered, independently of that he sustained as a consumer in being deprived of his means of providing himself and his household with water for domestic uses. To this extent the special demurrer was properly sustained. It was not, however, incumbent on the plaintiff, as the defendant urged by way of special demurrer, to specifically state the manner in which he computed his damage to be in the amount sued for. All a pleader is required to state are the facts upon which he relies for recovery, when general damages are claimed; though, when special damages are averred, it is necessary for him to specify the particular items for which he sues. From the very nature of things, general damages are incapable of segregation into different items. In his amendment the plaintiff did allege special damages in the sum of one dollar, the cost of restoring the water connection. And in all other respects the amended petition met the special objections pointed out in the demurrer, in so far as these objections were well taken.

*Judgment reversed. All the Justices concur.*