## 24217. MARTHA MILLS v. MOSELEY.

DECIDED FEBRUARY 8, 1935.

*James R. Davis, Jones, Evins, Powers & Jones,* for plaintiff in error. '

*George Miller, Beck, Goodrich & Beck,* contra.

JENKINS, P. J.  The controlling averments of the petition were that the plaintiff and other residents relied upon the previous pumping of the water from the private reservoir of the defendant mill company through the city's distribution system, including the fire hydrants near the plaintiff's property; but the petition failed to show that the furnishing of the water to the city was other than gratuitous, and failed to indicate any privity of contract between the plaintiff and the defendant, or any legal duty to the plaintiff. There were additional averments, that the fire could easily have been extinguished and the property saved, if the person who was alleged to have been the city manager and also the outside superintendent of the mill company, acting within the scope of his employment, had not ordered the water cut off and refused to allow the firemen to throw it on the fire.  It is alleged that this conduct was unnecessary, wilful, malicious, and for the purpose of injuring and damaging the plaintiff and destroying his property; that the cutting off of the water and consequent destruction of the property of the plaintiff and adjacent owners were "the result of an understanding and conspiracy entered into between the defend-

ant company and the said [person named as the city manager and outside superintendent of the company] in order to compel petitioner to abandon or sell his said property and go out of business in town;" and that the action of the person named was "the act of the defendant mills and they are liable therefor."

1. "The great weight of authority is to the effect that a resident of a city can not recover of a waterworks company damages for loss by fire occasioned by the failure of such company to furnish, in accordance with its contract with the city, a sufficient supply of water to extinguish the fire." *Holloway* v. *Macon Gas-Light & Water Co.,* 132 *Ga.* 387, 394 (64 S. E. 330). There being no privity of contract between the resident and the company, and no public duty on the part of the company as to the resident, he has no right of action either on the express contract of the city or in tort. Nor can he recover either ex contractu or ex delicto upon the theory that an implied contract and duty by the company to the resident arises in favor of the resident from the express contract between the city and the company. *Fowler* v. *Athens City Waterworks Co.,* 83 *Ga.* 219, 221, 222 (9 S. E. 673, 20 Am. St. R. 313); *Holloway* v. *Macon Gas-Light &c. Co.,* supra; *Gnann* v. *Coastal Public Service Co.,* 44 *Ga. App.* 217 (160 S. E. 807); German Alliance Insurance Co. *v.* Home Water Supply Co., 226 U. S. 220 (33 Sup. Ct. 32, 57 L. ed. 195), modifying Guardian Trust Co. *v.* Fisher, 200 U. S. 57 (26 Sup. Ct. 186, 50 L. ed. 367). The rule as to the privity of a resident and the duty of the company to him is different where the company under its franchise with the city is under the duty of furnishing and undertakes to furnish to individual residents a supply of water at fixed tolls, and wrongfully cuts off the supply thus furnished to a resident. *Freeman* v. *Macon Gas-Light & Water Co.,* 126 *Ga.* 843, 845-847 (56 S. E. 61, 7 L. R. A. (N. S.) 917).

2. Mere intent or motive will not create an actionable breach of contract or violation of a duty in the absence of any contract or duty. Adler *v.* Fenton, 65 U. S. 407 (16 L. ed. 696); Second National Bank *v.* Grand Lodge, 98 U. S. 124 (25 L. ed. 75). The existence, therefore, of even a wilful, wanton, or malicious purpose on the part of a water company to injure a resident of a city by failing to furnish to the city a supply of water or stopping such supply during a fire, by which property of the resident is destroyed, will

give him no cause of action ex contractu or ex delicto against the company, unless there is some privity of contract or a statutory duty upon which to base the action. See German Alliance Ins. Co. v. Home Water Supply Co., supra.

3. A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons to do some act which is a tort, or to do a lawful act by methods which constitute a tort. Pettibone v. U. S., 148 U. S. 197, 203 (13 Sup. Ct. 542; 37 L. ed. 419, 427) ; Barton v. Rogers, 21 Idaho, 609 (123 Pac. 478; 40 L. R. A. (N. S.) 681, 684, Ann. Cas. 1913E, 192) ; 12 C. J. 540 et seq. "Where civil liability for a conspiracy is sought to be imposed, the conspiracy of itself furnishes no cause of action. . . The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done wrongfully." Woodruff v. Hughes, 2 Ga. App. 361 (58 S. E. 551).

(a) "Unless made so by statute, a city is not liable for failing to protect [its] inhabitants against destruction by fire. Wright v. Augusta, 78 Ga. 241 [6 Am. St. R. 256]." Holloway v. Macon Gas-Light &c. Co., supra. Thus, a city not being liable to a resident for a failure to extinguish a fire on his premises, and a water company under contract only with the city not being liable to the resident for a failure or refusal to furnish water to the city, an agreement or understanding between the city and the company to withhold water from the city while property of the resident was burning would not constitute a conspiracy which would give to the resident a right of action against the company, irrespective of any question as to moral culpability of such an alleged understanding.

4. Even if the right to appropriate the property of another in a situation of overwhelming necessity such as a fire, as recognized at common law and based upon extreme needs of nature transcending customs which ripened into the earliest laws, should exist in this State in favor of an individual, and should not be limited to a right analogous to that of eminent domain to appropriate property during a "public necessity," of which only "the constituted authorities are to judge" (italics ours), as was said in Bishop v. Macon, 7 Ga. 200, 202 (50 Am. D. 400) ; see also Civil Code of 1910, §§ 1632, 3628; Robinson v. Bank, 18 Ga. 65, such a right in the individual would operate only as a justification affording a

defense to his act of trespass or other wrong which he has already committed in destroying, taking, or using the property of another, and could not be extended under any sound precedent or authority to create a right of action on account of a refusal or failure by the owner to permit the taking or use of his property, upon the theory that any individual in his extreme personal necessity has the right to take private property from its owner, and the owner has a corresponding duty to such individual to allow the property to be taken, or become amenable in damages to him. See Bowditch *v.* Boston, 101 U. S. 16 (25 L. ed. 980, 981). And even wilfulness or malice in such a refusal, in the absence of an obligation on the part of the owner, could not, as already stated, create a liability ex contractu or ex delicto. In such a case, legal rights and duties are independent of any ethical or moral rules which might be thought to require one not to withhold from another aid in his extreme distress.

5. Under the preceding rulings, the petition of the plaintiff, resident of a city, against the defendant mill company for $25,000 punitive and exemplary damages, because of its alleged unnecessary, wilful, and malicious refusal to allow the use of its water supply by the city, and the cutting off of its water supply from a city hydrant during the destruction by fire of the plaintiff's property, and because of an alleged "conspiracy" between 'the city and the defendant to withhold such water, failed to state a cause of action and was subject to the general demurrer. Under this decision on the general demurrer, it is unnecessary to consider other questions, as to the misjoinder of the alleged tortious acts of the mill company alone with the acts of "conspiracy" charged between it and the city, as to the legal impossibility of a conspiracy on the part of one individual alone, who is alleged to have been acting both as manager of the city and as superintendent of the company, or as to the sufficiency or relevancy of these and other particular averments, which are attacked by the special demurrers.

*Judgment reversed. Stephens and Sutton, JJ., concur.*